UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


JAMES A. HARNAGE,                    :
          Plaintiff,                 :
                                     :              PRISONER
     v.                              :   Case No. 3:12-cv-1521(AWT)
                                     :
BRIGHTHAUPT, et al.,                 :
          Defendants.                :


INITIAL REVIEW ORDER

     The plaintiff, who is currently incarcerated at the

MacDougall-Walker Correctional Center in Suffield, Connecticut,

has filed a complaint pro se pursuant to 42 U.S.C. § 1983.  He

names as defendants Warden Brighthaupt, Deputy Warden Powers,

Deputy Warden Davis, Lieutenant Mollin, Captain Johnson, Captain

Watson, Captain Danya Baker, Captain Bryan Vigars, Lieutenant

John J. Bernard, Counselor Supervisor Boufard, Disciplinary

Coordinator Johnson, Correctional Officer Santopietro,

Correctional Officer Hogan, Correctional Officer Faraci,

Correctional Officer Christiaello, Correctional Officer Robert

Dicosmo, Lieutenant Wright, Correctional Officer Goncalvez,

Correctional Officer Tardiff, Correctional Officer St. Pierre and

Correctional Officer Mulligan.  All defendants are named in their

individual and official capacities.

     Under 28 U.S.C. § 1915A, the court must review prisoner

civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  Id.

In reviewing a pro se complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]."  Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007).  Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief.  Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007).  Conclusory allegations are not sufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  But "'[a] document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"  Boykin v. KeyCorp, 521 F.3d 202, 214 (2d Cir. 2008) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)).

I.   Factual Allegations

The plaintiff includes sixteen counts in his complaint.  All of his claims arise out of acts he alleges occurred while he was

confined at the Cheshire Correctional Institution.

Count One:

The plaintiff states that he is well known among correctional staff at Cheshire Correctional Institution as being actively outspoken regarding conditions of confinement.  He has filed numerous grievances regarding conditions and the actions of various staff members.

On September 10, 2011, the plaintiff filed grievances against defendants Mollin and Santopietro because they would not let him exchange an allegedly uncooked burger he received at lunch.  Defendants Mollin and Santopietro verbally harassed him about the incident and about filing grievances against them.

On September 20, 2011, defendant Hogan issued the plaintiff a disciplinary report for mailing letters to three different people in one envelope.  This particular infraction is not mentioned in the Administrative Directives.  Defendant Mollin was present when the plaintiff was escorted to restrictive housing and was present at the disciplinary hearing.  The plaintiff believes that defendant Hogan issued the disciplinary report in conspiracy with defendants Mollin and Santopietro in retaliation for his exercise of his rights to freedom of speech, access to the courts and redress of grievances.

The plaintiff contends that the issuance of a disciplinary report for conduct not specifically set forth in the Inmate

Handbook or Administrative Directives violated his right to due process. He states that defendants Brighthaupt, Davis and Powers had a duty to adequately write the directives and handbook to provide notice that this conduct would result in issuance of a disciplinary report.

Count Two:

In Count Two, the plaintiff states that defendant Disciplinary Coordinator Johnson failed to consider all of the relevant evidence regarding the disciplinary charge and failed to timely schedule the hearing. The hearing was conducted by an unidentified hearing officer who found the plaintiff guilty despite the fact that none of the letters or the envelope were in the plaintiff's handwriting and the plaintiff did not know any of the addressees. The plaintiff characterizes this claim as a denial of due process.

Count Three:

In Count Three, the plaintiff alleges that two weeks after he was sent to restrictive housing, the property officer, defendant Faraci, found a sewing needle in the plaintiff's property. The search was initiated and supervised by defendant Mollin. The plaintiff received a disciplinary report for possession of contraband. The plaintiff contends that defendant Mollin planted the sewing needle in his property.

The plaintiff received a second disciplinary report for

4

possession of contraband.  The second report covered some items
that the plaintiff admits were contraband and included in his
property, along with several items that were not contraband.
Disciplinary Coordinator Johnson told the plaintiff that if he
did not plead guilty to possession of all of the listed items as
contraband, an individual disciplinary report would be issued for
each item.  The hearing on the disciplinary reports was untimely.
The plaintiff contends that the disciplinary reports were issued
in retaliation and the hearing violated his right to due process.

Count Four:

In Count Four, the plaintiff challenges the conditions in
what he calls "Ticket Blocks."  Although the units are classified
as general population housing units, the conditions in these
units are more restrictive than the conditions in other housing
units.  When the plaintiff complained to defendants Brighthaupt
and Watson, he was informed that the units are considered general
population housing units and are not punitive.

In the units, the plaintiff was denied a communal meal
period and had to eat in his cell.  He was required to shower in
the evening and did not have the choice of showering in the
morning or evening.  He had limited access to the Inmate Resource
Center.  There was no television in the day room and no
typewriter in the unit.  Finally, there was no access to the
outdoor recreation yard or the gymnasium.  The plaintiff

characterizes this claim as a denial of due process and equal
protection, as well as being subjected to unconstitutional
conditions of confinement.

Count Five:

In Count Five, the plaintiff alleges that defendants Powers,
Brighthaupt, Davis and Christiaello interfered with his right of
access to the prison grievance procedure.  He states that
defendant Brighthaupt issued a memo requiring inmates to seek
informal resolution with every staff member in the chain of
command before filing a grievance.  Defendant Brighthaupt also
placed the plaintiff on grievance restriction.  The plaintiff
characterizes the actions of defendant Brighthaupt as
retaliatory.

Count Six:

On March 21, 2012, the plaintiff was attempting to obtain
affidavits from other inmates regarding strip searches.  The
plaintiff intended to use the affidavits in an action before the
Connecticut Claims Commissioner.  Defendant Bernard, the notary,
notarized the affidavit presented by the first inmate in line,
but then, after reading the second affidavit, refused to notarize
the affidavits presented by any other inmate.  Defendant Bernard
also refused to notarize an affidavit and fee waiver for the
plaintiff.  The plaintiff contends that these actions interfered
with his right of access to the courts and were retaliatory in

nature.

<u>Count Seven</u>:

In Count Seven, the plaintiff alleges that, within an hour of refusing to notarize the affidavits, defendant Bernard ordered defendant Dicosmo to conduct a routine search of the plaintiff's cell.  Defendant Dicosmo only searched the plaintiff's legal materials.  The plaintiff believes that defendant Dicosmo was told to retrieve any affidavits.  The plaintiff alleges that this search was made as part of a conspiracy with defendants Baker and Vigars and under the authority of defendants Brighthaupt, Powers and Davis.

<u>Count Eight</u>:

In Count Eight, the plaintiff alleges that, although defendant Dicosmo was unable to locate any affidavits during his search, he did confiscate a habeas petition the plaintiff was preparing for another inmate.  Defendant Discosmo issued the plaintiff a disciplinary report for possession of contraband because the habeas petition was for another inmate.  The plaintiff contends that he was singled out for punishment; many inmates provide legal assistance to others and are not punished. The plaintiff characterizes this claim as a violation of his right to freedom of speech, access to the courts and equal protection.  He also argues that his due process rights were violated because the defendants failed to indicate in the

Administrative Directives or Inmate Handbook that such conduct
was forbidden.

Count Nine:

The plaintiff alleges that his disciplinary hearing was
untimely and that the hearing officer refused to consider his
evidence or call the inmate whose name appeared on the habeas
petition to testify that the plaintiff had the petition with the
inmate's permission and was not charging for assistance.

Count Ten:

Following the guilty finding, the plaintiff was transferred
to a Ticket Block where he was subjected to the conditions
described above.

Count Eleven:

The plaintiff was assigned a violent, unstable inmate, Alex
Cruz, as a cellmate.  In June 2012, the plaintiff informed
defendant Captain Johnson that he felt threatened by Cruz.  In
July 2012, a friend of Cruz was moved to the housing unit.  Cruz
wanted to share a cell with his friend and began threatening the
plaintiff that if Cruz were not moved, he would assault the
plaintiff.  On July 9, 2012, both the plaintiff and Cruz informed
defendants Goncalvez and Tardiff that they could not remain as
cellmates.  The plaintiff emphasized that he feared for his
safety and Cruz repeated his threats.  Defendants Goncalvez and
Tardiff did not move either inmate.

8

Several hours later defendant Wright spoke with Cruz and threatened to send him to segregation if he continued to threaten the plaintiff.  He did not, however, send Cruz to segregation. The following day, the plaintiff and Cruz approached defendants Tardiff and St. Pierre and asked to speak with defendant Captain Johnson.  A few hours later, defendant Johnson spoke with Cruz. Later in the day, Cruz was informed that he would be transferred to another cell, but not to the cell with his friend.  Cruz objected to the inmate in the new cell and argued with defendant Tardiff.  After defendant Tardiff refused to call defendant Johnson back to the unit, Cruz began to assault the plaintiff. The plaintiff contends that the defendants failed to protect him from harm and retaliated against him by failing to follow standard prison protocol to protect the plaintiff from harm.

Count Twelve:

Although Cruz was the aggressor in the assault, the plaintiff was taken to the restrictive housing unit and subjected to a strip search by defendant Mulligan in the presence of defendants Dicosmo, Watson, Captain Johnson and Wright.

Count Thirteen:

Initially, only Cruz was charged for the assault.  The plaintiff was released from restrictive housing after three days. He immediately filed a grievance.  On July 16, 2012, the plaintiff was returned to restrictive housing because defendants

Captain Johnson, Disciplinary Coordinator Johnson, Brighthaupt, Watson, Powers and Davis characterized the incident as a fight. Cruz pled guilty to his disciplinary charge and served less time in restrictive housing than the plaintiff.  The plaintiff considers this charge retaliation for his filing the grievance. He also asserts an equal protection claim.

Count Fourteen:

Defendant Mulligan subjected the plaintiff to another strip search upon his readmission to restrictive housing.  Defendants Dicosmo, Wright, Captain Johnson and Watson witnessed the search.

Count Fifteen:

The plaintiff alleges in Count Fifteen that the disciplinary hearing was untimely, and the hearing officer failed to consider all evidence and did not allow the plaintiff to call defendant Tardiff as a witness.

Count Sixteen:

The plaintiff alleges in Count Sixteen that he was again assigned to a Ticket Block and subjected to the same conditions that are described above.  Cruz was in the same housing unit. Other inmates in the unit called the plaintiff a snitch because he had pressed charges against Cruz.  The plaintiff believes that his placement in the same housing unit as Cruz was retaliatory. When he complained, he was transferred to another facility.

10

II.   <u>Analysis</u>

    A.   <u>Strip Searches</u>

In Counts Twelve and Fourteen, the plaintiff alleges that he was subjected to strip searches in the presence of several correctional officers.  He characterizes these claims as ones for violation of his Fourth Amendment right to be free from unreasonable searches and his Eighth Amendment right to be free from cruel and unusual punishment.

In <u>Bell v. Wolfish</u>, the Supreme Court specifically held that the Fourth Amendment does not prohibit routine strip searches of inmates, provided such searches are conducted in a reasonable manner.  <u>See</u> 441 U.S. 520, 558 (1979).  The plaintiff was strip searched as a routine matter in connection with being escorted to restrictive housing.  He alleges no facts suggesting that the search was unreasonable such as to support a Fourth Amendment claim.

Inmates have a limited right to bodily privacy.  Cases finding a violation of this right in the context of a strip search do so where the search was conducted by correctional staff of the opposite sex.  <u>See</u> <u>Covino v. Patrissi</u>, 967 F.2d 73 (2d Cir. 1992).  The plaintiff does not allege such facts. Accordingly, the claims in Counts Twelve and Fourteen are dismissed pursuant to 28 U.S.C. § 1915A.

    B.   <u>Due Process</u>

In Counts Two, Nine and Fifteen, the plaintiff argues that irregularities at disciplinary hearings, such as an untimely hearing, inability to call witnesses and consider all available evidence, violated his right to due process.

To prevail on a due process claim, the plaintiff must show that he had a protected liberty interest and that he was not afforded the requisite process before he was deprived of that interest.  See Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000). To determine whether a prisoner had a protected liberty interest in a disciplinary hearing, the court must look to Sandin v. Conner, 515 U.S. 472 (1995), where the Supreme Court held that state-created liberty interests of prisoners were limited to freedom from restraint that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483-84.  The rule in this Circuit, since Sandin, is that a prisoner has a protected liberty interest "'only if the deprivation ... is atypical and significant and the state has created the liberty interest by statute or regulation.'" Tellier v. Fields, 280 F.3d 69, 80 (2d Cir. 2000) (quoting Sealey v. Giltner, 116 F.3d 47, 52 (2d Cir. 1997)) (omission in original).

As a result of the disciplinary charges, the plaintiff was confined in restrictive housing.  The Second Circuit has held, however, that confinement in restrictive housing for periods much

longer that those suggested by the plaintiff's allegations do not constitute an atypical and significant hardship sufficient so as to state a claim under <u>Sandin</u>.  <u>See, e.g.</u>, <u>Frazier v. Coughlin</u>, 81 F.3d 313, 317-18 (2d Cir. 1996) (holding that 120 days confinement in segregation followed by 30 days loss of recreation, commissary privileges, packages and telephone use did not state a cognizable claim for denial of due process). Accordingly, these due process claims are dismissed pursuant to 28 U.S.C. § 1915A.

### ORDERS

In accordance with the foregoing, the court enters the following orders:

(1)  All claims challenging strip searches and for violation of due process in connection with disciplinary hearings are hereby **DISMISSED** pursuant to 28 U.S.C. § 1915A.  The case will proceed as to all remaining claims.

(2)  The **Pro Se Prisoner Litigation Office shall verify** the current work addresses for all defendants with the Department of Correction Office of Legal Affairs and mail waiver of service of process request packets to each defendant in his or her individual capacity within **fourteen (14)** days of this order, and report to the court on the status of those waiver requests on the **thirty-fifth (35)** day after mailing.

If any individual defendant fails to return the waiver

13

request, the Pro Se Prisoner Litigation Office shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3)  The **Pro Se Prisoner Litigation Office shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service.  The U.S. Marshal is directed to effect service of the complaint on all defendants in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, Connecticut 06141, within **fourteen (14)** days from the date of this order and to file returns of service within **twenty (20)** days from the date of this order.

(4)  The **Pro Se Prisoner Litigation Office shall** send written notice to the plaintiff of the status of this action, along with a copy of this order.

(5)  **The defendants shall** file their response to the complaint, either an answer or motion to dismiss, within **seventy (70)** days from the date of this order.  If they chooses to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They also may include any and all additional defenses permitted by the Federal Rules.

(6)  Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)**

14

from the date of this order.  Discovery requests need not be filed with the court.

(7)  All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(8)  Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21)** days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

Entered this 20th day of December 2012, at Hartford, Connecticut.

/s/AWT
_____
Alvin W. Thompson
United States District Judge
